**ANHEUSER–BUSCH, INC., Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 822, Appellant.**

No. 77–1561.

United States Court of Appeals, Fourth Circuit.

Argued June 8, 1978.

Decided Sept. 21, 1978.

---

Jonathan G. Axelrod, Bethesda, Md. (Hugh J. Beins, Washington, D. C., Norman Olitsky, Portsmouth, Va., on brief), for appellant.

Charles P. O'Connor, Washington, D. C. (Nancy L. Griffin, Morgan, Lewis & Bockius, Washington, D. C., on brief), for appellee.

Before WINTER and BUTZNER, Circuit Judges, and D. DORTCH WARRINER, United States District Judge for the Eastern District of Virginia, sitting by designation.

BUTZNER, Circuit Judge:

Anheuser-Busch brought this suit seeking a declaratory judgment that its refusal to deduct union dues from the wages of 26 employees is legal. The International Brotherhood of Teamsters, Local 822, contends that the company must make the deductions because the employees could not revoke their dues checkoff authorizations during a hiatus between bargaining agreements. The district court ruled that the revocations were valid, and it enjoined the union from seeking to require the company to deduct dues from the wages of these employees. We affirm.

## I

The collective bargaining agreement in effect between the company and the union from June 2, 1973, to February 29, 1976, required the company to check off union dues from employees' wages in accordance with the following clause:

> The Company agrees to deduct from the pay of all employees covered by this Agreement the regular dues and initiation fees, and agrees to remit to said Local Union all such deductions, provided that the Union delivers to the Company a written authorization, signed by the employee irrevocable for one year or expiration of this Agreement, whichever shall occur sooner.

To authorize a checkoff, employees signed a form supplied by the union. This form provided:

> This authorization and assignment shall be for the term of the applicable contract between the Union and the Company, or for one year, whichever is the lesser, and shall automatically renew itself for successive yearly or applicable contract periods thereafter, whichever is the lesser, unless I give written notice to the Company and the Union at least 60 days, and not more than 75 days before any periodic renewal date of this authorization and assignment of my desire to revoke the same.

During the term of the 1973–76 agreement, the company honored all checkoff authorizations.

At midnight on February 29, 1976, the collective bargaining agreement terminated without renewal, and the union began a strike which lasted until June 6, 1976. During this strike, 26 employees returned to work. These employees notified the company and the union that they had resigned from the union and revoked their checkoff authorizations.

On June 6, 1976, the parties signed a new contract containing the same checkoff provision as the 1973–76 contract. The company has refused to honor the union's requests for it to deduct dues from the wages of the employees who gave notice of the revocation of their authorizations during the strike while no contract was in effect.

## II

The union asserts that these revocations were ineffective because they were not made between 60 and 75 days prior to either an anniversary of the date on which the employees executed their checkoff authorization forms or to the date of the expiration of the contract. It contends that the checkoff authorization agreement makes revocation possible only at these times. It emphasizes that the collective bargaining agreement and the checkoff authorization agreements are separate contracts and argues that a checkoff authorization agreement between a union and an employee can survive termination of the collective bargaining agreement.

We conclude, however, that § 302(c)(4) of the Taft-Hartley Act [29 U.S.C. § 186(c)(4)] guaranteed the employees the right to revoke their checkoff authorizations at will during the hiatus between collective bargaining agreements. Section 302 of the Act prohibits payments by employers to unions except in specified situations. The exception applicable here permits payments,

> with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided*, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; . . .. § 302(c)(4) [29 U.S.C. § 186(c)(4)].

In *Atlanta Printing Specialties*, 215 NLRB 237 (1974), the National Labor Relations Board said that § 302(c)(4), guarantees an employee two distinct rights when he executes a checkoff authorization under a collective-bargaining agreement: (1) a chance at least once a year to revoke his authorization, and (2) a chance upon the termination of the collective-bargaining agreement to revoke his authorization.

Based on this reading of the statute, the board ruled that an employer and a union could not defeat the right of employees to revoke their checkoff authorizations upon termination of a collective bargaining agreement by entering into a new agreement before the original one expired. It held that revocations tendered during the specified period prior to the original expiration date were valid. 215 NLRB at 238.

The court of appeals enforced the board's decision, agreeing that § 302(c)(4) "guarantees employees an opportunity to revoke dues checkoff authorizations at the expiration of each collective bargaining agreement." *NLRB v. Atlanta Printing Specialties*, 523 F.2d 783, 788 (5th Cir. 1975). This sensible reading of the statute gives effect to its underlying purpose. The checkoff provision is not a union security device; it is simply an administrative convenience for the collection of dues. *See* 523 F.2d at 786.

The interpretation of § 302(c)(4) by the court of appeals and the board fully accords with the Supreme Court's comments in *Felter v. Southern Pacific Co.*, 359 U.S. 326, 79 S.Ct. 847, 3 L.Ed.2d 854 (1959), about a "quite similar" provision of the Railway Labor Act. 359 U.S. at 333, n. 10, 79 S.Ct. 847. In *Felter* the Court held that the union and the employer could not require the employees to use a form supplied by the union to revoke a checkoff authorization. In explanation, the Court emphasized that the employees' freedom of decision, which the statute was intended to assure, should not be "eroded in the name of procedure, or otherwise." 359 U.S. at 334, 79 S.Ct. at 853. Furthermore, the Court observed that it was doubtful "whether the right to revoke could be waived at all in advance of the

time for its exercise." 359 U.S. at 336, 79 S.Ct. at 854.

*Murtha v. Pet Dairy Products Co.*, 44 Tenn.App. 460, 314 S.W.2d 185 (1957), provides an answer to the union's insistence that an employee can make his revocation effective at the termination of the contract only if he has given notice 60 to 75 days before termination. *Murtha*, like the controversy before us, involved the right of employees to revoke their checkoff authorizations at will between bargaining agreements. A Teamster's dues checkoff authorization, essentially similar to the one under consideration here, was irrevocable for the term of the contract or for one year, whichever was lesser, and was renewable for successive years or contract periods unless the employee gave written notice "at least 60 days and not more than 75 days before any periodic renewal date . . . ." 314 S.W.2d at 187. The court reasoned that during the period between the expiration of one collective bargaining contract and the effective date of the next one, there was no termination date by which employees could determine one of the times stipulated in § 302(c)(4) for revoking their authorizations. Therefore, in order to give effect to the statute, it held that authorizations were revocable at will during a hiatus between contracts.

Contrary to the union's contentions, the court's decision in *Associated Press v. NLRB*, 160 U.S.App.D.C. 396, 492 F.2d 662 (1974), is not inconsistent with our interpretation of § 302(c)(4). In that case, an arbitrator found that in a situation indistinguishable in principle from the one in this case, a checkoff authorization survived termination of a collective bargaining agreement.\* In accordance with its policy, enunciated in *Spielberg Manufacturing Co.*, 112 NLRB 1080, 1082 (1955), of dismissing unfair labor practice complaints when the issues raised in them have been resolved by arbitration awards which resulted from "fair and regular" procedures and which are "not clearly repugnant to the purposes and policies" of the National Labor Relations Act, the board disposed of the complaint without reaching its merits. *Associated Press*, 199 NLRB 1110, 1114–15 (1972). The court of appeals approved this application of the *Spielberg* doctrine and affirmed the board's decision without interpreting § 302(c)(4). It stated,

> Petitioners here contend that the arbitrator's award was repugnant to the statute because of his interpretation of Section 302(c)(4)'s limitation on irrevocability of dues checkoff authorizations. We do not intend, any more than did the Board, to pronounce an interpretation of Section 302(c)(4). It suffices to conclude that the arbitrator's reasonable interpretation was not inconsistent with either the fundamental purposes or the specific provisions of the sections of the National Labor Relations Act which it is the duty of the Board to implement. 160 U.S.App.D.C. at 401, 492 F.2d at 667.

Hence, it is apparent that the court did not adopt the arbitrator's interpretation of § 302(c)(4).

We therefore conclude that the revocations tendered during the period between the expiration of one bargaining contract and the execution of the next one were effective. Consequently, we affirm the judgment of the district court.

---

\* Other arbitrators differ about the revocability of checkoff authorizations during a hiatus between bargaining agreements. *Compare* Washington Post Co., 66 L.A. 553 (1976) (revocation invalid) *with* Sperry Rand Corp., 44 L.A. 965 (1965) (revocation valid). Unions also differ. For example, the Fifth Circuit noted, "The union concedes that when there is no collective bargaining agreement in effect, dues checkoff authorizations are revocable at will." *NLRB v. Atlanta Printing Specialties*, 523 F.2d 783, 788 (5th Cir. 1975).