RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0036p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ROBBIE OHLENDORF; SANDRA ADAMS, and all others
similarly situated,

  *Plaintiffs-Appellants*,

  *v.*

No. 17-1864

UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL
UNION, LOCAL 876,

  *Defendant-Appellee*.

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:16-cv-01439—Paul Lewis Maloney, District Judge.

Argued:  February 1, 2018

Decided and Filed:  February 22, 2018

Before:  SUTTON, KETHLEDGE, and LARSEN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Amanda K. Freeman, NATIONAL RIGHT TO WORK LEGAL DEFENSE
FOUNDATION, INC., Springfield, Virginia, for Appellants.   J. Douglas Korney, LAW
OFFICES OF J. DOUGLAS KORNEY, Farmington Hills, Michigan, for Appellee. **ON BRIEF:**
Amanda K. Freeman, William L. Messenger, Glenn M. Taubman, NATIONAL RIGHT TO
WORK LEGAL DEFENSE FOUNDATION, INC., Springfield, Virginia, for Appellants.
J. Douglas Korney, LAW OFFICES OF J. DOUGLAS KORNEY, Farmington Hills, Michigan,
for Appellee.

---

**OPINION**

---

SUTTON, Circuit Judge.  The Labor Management Relations Act makes it a crime for an employer to deduct union dues from an employee's paycheck and for the union to accept the dues, except if the employee consents by signing an authorization form, often called a dues checkoff.  Robbie Ohlendorf and Sandra Adams signed dues checkoff authorizations with their employer in 2013.  When they tried to revoke them three years later, they did not follow the protocol for revoking their consent, and the union insisted that they do so.  Ohlendorf and Adams sued the union in response.  Their putative class action lawsuit seeks damages and injunctive relief on the ground that the union violated the Act and its duty of fair representation.  The district court dismissed the complaint as a matter of law.  Because this criminal law does not create a private right of action and because the union did not act arbitrarily or in bad faith, we affirm.

I.

Ohlendorf and Adams worked for Oleson's Food Stores in Michigan.  The collective bargaining agreement between Oleson's and Local 876 of the United Food & Commercial Workers Union allowed Oleson's to deduct union dues from their employees' paychecks if the employee signed an authorization form.  The form provided that the checkoff authorization would be irrevocable for one year or until the termination date of the agreement, whichever occurred sooner, and thereafter for yearly periods unless revoked by certified mail during a 15-day window each year.

Ohlendorf and Adams joined the union in 2013 and signed the authorization forms.  Three years later, they resigned their membership and tried to revoke their permission.  But they sent their written revocations by regular mail, not certified mail, and did so outside of the 15-day period for revoking authorization.  The union refused to accept the revocations for that year.  The company thus continued to deduct union dues from their wages, and the union continued to accept the payments.

Ohlendorf and Adams filed a class action against the union, claiming it violated the Labor Management Relations Act by imposing conditions on their ability to revoke their authorizations and violated its duty of fair representation by enforcing those conditions. They sought damages and injunctive relief. The district court dismissed the complaint as a matter of law, prompting this appeal. While the appeal was pending, Adams successfully revoked her authorization and Ohlendorf quit working at Oleson's.

II.

Article III of the United States Constitution empowers the federal courts to hear only cases or controversies, U.S. Const. art. III, § 2, cl. 1, "a cradle-to-grave requirement" that must be satisfied at the time a claimant files a lawsuit and must remain throughout the life of the case, *Fialka-Feldman v. Oakland Univ. Bd. of Tr.*, 639 F.3d 711, 713 (6th Cir. 2011). If something happens that makes it "impossible" to grant "effectual relief" with respect to a claim, that claim must be dismissed as moot. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Events have mooted one of the claims filed by Ohlendorf and Adams. They asked the district court to enjoin the union from enforcing the window-period and certified-mail requirements. But Ohlendorf no longer works for Oleson's and Adams recently revoked her authorization. An injunction on this score thus would not do them any good. While that forward-looking claim is moot, the employees' backward-looking request for damages—the money they paid to the union after the union refused to honor their attempts to revoke—lives on.

III.

Section 302 of the Labor Management Relations Act makes it a crime for an employer to willfully give money to a labor union, 29 U.S.C. § 186(a), and for a labor union to willfully accept money from an employer, *id.* § 186(b). The prohibition contains several exemptions. Pertinent here, the Act exempts "money deducted from the wages of employees in payment of membership dues in a labor organization" if "the employer has received from each employee, on whose account such deductions are made, a written assignment." *Id.* § 186(c)(4). Under the exception, written assignments "shall not be irrevocable for a period of more than one year, or

beyond the termination date of the applicable collective agreement, whichever occurs sooner." *Id.*

The Attorney General has authority to enforce this criminal statute. But he has not done so with respect to these allegations. Nor have Ohlendorf and Adams filed a charge with the National Labor Relations Board that the union or their employer has committed an unfair labor practice.

What we have instead is a civil lawsuit filed by Ohlendorf and Adams in federal district court to enforce this criminal statute. That is not an everyday event in the federal courts. Before individuals may file such a lawsuit, they must identify a statutory cause of action that allows them to do so. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). They point to no such law, and under basic customs of statutory interpretation no such right of action exists.

"An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010). Nothing in § 302 says that private parties may enforce the law. The relevant language imposes federal criminal penalties on parties who willfully violate the statute: a criminal fine up to $15,000 or imprisonment up to five years. 29 U.S.C. § 186(d). That is a form of relief usually enforced by the federal government, not private parties. The section about "Penalties for violations" says nothing about civil remedies.

That leaves the possibility of an *implied* right of action. But that is an increasingly rare creature, one that requires us to infer that Congress created a private *right* and provided for a private *remedy*, all without taking the conventional route of doing so expressly. *See generally Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–58 (2017); *Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119–20 (2005).

Section 302 does not confer any individually enforceable right, "phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quotations omitted). Much less does the provision do so clearly. "[I]f Congress wishes to create new rights enforceable under [an implied private right of action], it must do so in clear and unambiguous terms." *Id.* at 290.

How, one might wonder, does Congress "imply" a right of action in "clear and unambiguous terms"? The answer is that the *rights-creating language* must be "clear and unambiguous." *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005). "Rights," it also deserves mention, differ from the "broader or vaguer 'benefits' or 'interests'" that some statutes create. *Rancho Palos Verdes*, 544 U.S. at 119–20. Statutes that ban conduct but do not identify specific beneficiaries do not suffice. *Sandoval*, 532 U.S. at 289.

The concrete usually beats the abstract. Some examples may help. On the permissible side of the line: A statute that says "*[n]o person* in the United States shall . . . be subjected to discrimination" on the basis of race creates an individual right to be free from race discrimination. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691 (1979). And a statute that reads "*[n]o person* in the United States shall, on the basis of sex, . . . be subjected to discrimination" creates an individual right to be free from sex discrimination. *Id.* Both statutes clearly spell out the rights and beneficiaries and thus suffice to create implied rights of action.

On the impermissible side of the line: A statute prohibiting the funding of "any educational agency or institution which has a policy or practice of permitting the release of education records" creates no rights at all, even though some people (students) might benefit from the statute and might have an interest in enforcing it. *Gonzaga*, 536 U.S. at 287–88. Neither does a statute that authorizes federal agencies "to effectuate the provisions of [a ban on intentional race discrimination] . . . by issuing rules, regulations, or orders of general applicability." *Sandoval*, 532 U.S. at 288–89. Nor a statute that says "[t]he chief State election official . . . shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority." *Brunner v. Ohio Republican Party*, 555 U.S. 5, 5 (2008) (per curiam). Nor a statute that requires state governments to "substantially comply" with federal requirements to receive federal funds under Title IV-D of the Social Security Act. *Blessing v. Freestone*, 520 U.S. 329, 344 (1997). Nor a statute that requires the federal government to "approve any [state Medicaid] plan which fulfills the conditions specified" in another subsection. *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1387 (2015) (plurality opinion).

Section 302 falls on the impermissible side of this line. It does not create person-specific rights. Like the statutes in *Gonzaga*, *Sandoval*, *Brunner*, *Blessing*, and *Armstrong*, it "focus[es] on the person[s] regulated rather than the individuals protected." *Sandoval*, 532 U.S. at 289. The statute makes it a crime for an *employer* to willfully give money to a union, 29 U.S.C. § 186(a), and it makes it a crime for the *union* to willfully accept the money, *id.* § 186(b). It does not say anything about the individuals protected or their capacity to file a lawsuit under the standard of care—in truth, standard of criminal liability—created. *See Unite Here Local 355 v. Mulhall*, 134 S. Ct. 594, 595 (2013) (Breyer, J., joined by Sotomayor and Kagan, JJ., dissenting) (questioning whether § 302 creates a private right of action "in light of the Court's more restrictive views on private rights of action in recent decades").

Sure enough, one can identify potential beneficiaries of the statute: employees. But that puts them in a category covered by all criminal laws: victims. We do not casually, or for that matter routinely, imply private rights of action in favor of the victims of violations of criminal laws. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). Quite the opposite is true, as all of the following cases confirm. *See, e.g., Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165–66 (2008); *Central Bank of Denver*, 511 U.S. at 190–91; *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 20 (1979); *Cort v. Ash*, 422 U.S. 66, 80 (1975).

Other indicators of meaning confirm this reading of the statute. Section 302 is flanked by provisions of the Labor Management Relations Act that expressly establish private rights of action. Section 301 says that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court." 29 U.S.C. § 185(a). But that provision—creating a right of action for violations of collective bargaining agreements—does not cover this dispute. Section 303 says that "[w]hoever shall be injured in his business or property by reason o[f] any violation of [the ban on secondary boycotts] may sue therefor in any district court." 29 U.S.C. § 187(b). That provision has no application here either.

When Congress wished to provide a private right of action, as these provisions indicate, it had no trouble doing so—clearly. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979). We should respect its ability to decide when, and when not, to create private rights of action.

Ohlendorf and Adams insist that § 302(e) confers an express cause of action. But that is not so. That provision grants *jurisdiction* to the federal courts "to restrain violations of this section." 29 U.S.C. § 186(e). It says nothing about giving private parties the right to sue, and most assuredly says nothing about a right to sue for money damages. No Supreme Court case during the last four decades has found a private right of action from a jurisdictional provision. That is because a jurisdictional provision "creates no cause of action of its own force and effect" and "imposes no liabilities." *Touche Ross*, 442 U.S. at 577; *see Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 592 (6th Cir. 2013). Any such rights must be found in the substantive provisions of the statute, not its jurisdictional provisions. *Touche Ross*, 442 U.S. at 577.

But what does § 302(e) do if it does not create a private right of action, Ohlendorf and Adams ask? Why else allow jurisdiction to restrain violations of the law? Two answers. One: The statute creates jurisdiction for the courts to restrain violations of § 302 at the request of the Attorney General. Having entrusted the Attorney General to protect the public from criminal violations of § 302, Congress gave the federal courts authority to hear such actions and to permit federal courts (at the behest of the Attorney General) to enjoin violations of this criminal labor law.

Two: Section 302(e) provides the courts with jurisdiction to enjoin violations of § 302 in lawsuits brought under express private rights of action, as a needed exception to the Clayton Act and the Norris-LaGuardia Act's ban on labor-dispute injunctions. *See* 29 U.S.C. § 52; *id.* §§ 101–115. Consider a couple examples. Suppose that a union files a § 301 lawsuit (for breach of a collective bargaining agreement) seeking to enforce a provision of a collective bargaining agreement that violates § 302. In that situation, § 302(e) gives the court the power to enjoin the union from enforcing the collective bargaining agreement notwithstanding the Clayton and Norris-LaGuardia Acts. *Cf. Anheuser-Busch, Inc. v. Int'l Bhd. of Teamsters, Local 822*, 584

F.2d 41 (4th Cir. 1978). Or suppose that an arbitrator finds that an employer breached a provision of a collective bargaining agreement and awards damages to the union. The company might challenge the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10, by arguing that the provision of the collective bargaining agreement violates § 302 and therefore cannot be enforced. In that situation, the district court may set the arbitration award aside. *See Jackson Purchase Rural Elec. Coop. Ass'n v. Local Union 816, Int'l Bhd. of Elec. Workers*, 646 F.2d 264 (6th Cir. 1981). And under § 302(e), it also may enjoin the union from seeking to enforce the agreement notwithstanding the Clayton and Norris-LaGuardia Acts.

Ohlendorf and Adams claim that two Supreme Court decisions already have decided the question in their favor. Not true. *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993), never addressed today's issue. Plus, the claimants lost the injunction case on the merits anyway, which is why the opinion merely quotes § 302(e) but never analyzes whether it or any other provision creates a private right of action. *Id.* at 587. *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195 (1962), is of a piece, though even less relevant. That claimant too lost on the merits. And all it does is refer to the language of § 302(e) in addressing an issue unconnected to this dispute. *Id.* at 205. Neither case says anything about a money-damages private right of action.

None of this leaves the employees without recourse. They may wait for the Attorney General to prosecute the union for violating § 302. Or they may ask the Attorney General to seek an injunction. Or they may file a complaint with the National Labor Relations Board on the ground that a violation of § 302 or a similar statute amounts to an unfair labor practice under the National Labor Relations Act. *See WKYC-TV, Inc.*, 359 NLRB 286, 289 n.13 (2012); *Int'l Bhd. of Elec. Workers, Local No. 2088, AFL-CIO (Lockheed)*, 302 NLRB 322, 325 n.8 (1991). Many employees, including employees in this circuit, have taken this last route. *See, e.g., Stewart v. NLRB*, 851 F.3d 21 (D.C. Cir. 2017); *United Food & Commercial Workers Dist. Union Local One, AFL-CIO v. NLRB*, 975 F.2d 40 (2d Cir. 1992); *NLRB v. U.S. Postal Serv.*, 833 F.2d 1195 (6th Cir. 1987); *Peninsula Shipbuilders' Ass'n v. NLRB*, 663 F.2d 488 (4th Cir. 1981); *NLRB v. Atlanta Printing Specialties & Paper Prod. Union 527, AFL-CIO*, 523 F.2d 783 (5th Cir. 1975);

*Indus. Towel & Unif. Serv., a Div. of Cavalier Indus., Inc.*, 195 NLRB 1121 (1972); *NLRB v. Penn Cork & Closures, Inc.*, 376 F.2d 52 (2d Cir. 1967).

## IV.

Ohlendorf and Adams separately argue that the union breached its duty of fair representation under § 9(a) of the National Labor Relations Act. 29 U.S.C. § 159. To prove such a claim, the employees must show that the union's conduct was "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). The employees claim that the union's enforcement of the window-period and certified-mail requirements satisfies that standard. One feature of the union's conduct, we must acknowledge, is head scratching. Ohlendorf sent his revocation to the union on June 6, 2016, while Adams sent hers on July 14, 2016. Under their authorization forms, Ohlendorf had between July 2–17, 2016 to revoke his authorization, and Adams had between April 14–29, 2017. We can appreciate why the union might refuse to credit a late revocation. But it makes much less sense to refuse to credit a revocation sent in too early: Why refuse to credit the revocation for the next open period?

Be that as it may, we cannot say that the employees have shown arbitrariness or bad faith. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). The problem with the employees' claim is that they agreed to the window-period and certified-mail requirements when they signed the authorization form. Even if the requirements may seem burdensome, no one forced the employees to sign the checkoff authorizations. Having agreed to the two requirements, they are not in a position to say that the union acted arbitrarily in enforcing them.

For like reasons, the union's decision to enforce the requirements does not qualify as bad faith. To demonstrate bad faith, a plaintiff must show that the union acted with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). The employees have not met that standard. They do not allege that the union's decision to enforce the requirements was misleading or a product of fraud or dishonesty. The

authorization form signed by each of them spelled out the requirements they would need to follow to revoke their assignments. In holding the employees and itself to this contract, the union did not act in bad faith.

For these reasons, we affirm the district court's judgment.