NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0513n.06

Case No. 19-3012

FILED

Oct 11, 2019

DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Robert DeShetler, Jr., et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| FCA US, LLC, et al., | ) | OHIO |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE: BATCHELDER, DONALD, and READLER, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** In January 2018, Plaintiffs-Appellants filed claims against Defendants-Appellees for violations of the Labor Management Relations Act ("LMRA") based on negotiations that occurred among Defendant FCA US, LLC ("FCA") and Defendants (1) International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and (2) United Automobile, Aerospace and Agricultural Implement Works of America, Region 2B (hereinafter collectively referred to as "UAW") in 2012. Plaintiffs allege a hybrid claim against all defendants under section 301 of the LMRA for FCA's breach of various collective bargaining agreements and UAW's breach of their duty of fair representation. Alternatively, Plaintiffs allege a claim against UAW for violations of their independent duty of fair representation under 29 U.S.C. § 159(a). Defendants filed a motion to dismiss based on the

applicable statute of limitations, which the district court granted. Plaintiffs now appeal the district court's grant of dismissal.[1] Because this Court finds that Plaintiffs' claims fall outside the applicable statute of limitations, we AFFIRM the district court.

I.

FCA, which is short for Fiat Chrysler Automobiles, took over the Chrysler family of brands following Chrysler's bankruptcy in 2009. Jeep Wrangler is a Chrysler brand, and Plaintiffs worked at a Jeep Wrangler paint shop in the North Assembly Plant in Toledo, Ohio. FCA currently operates this assembly plant while UAW represents hourly workers at the plant. FCA, and previously Chrysler, allowed third-party suppliers to perform work on the assembly line that was traditionally completed by Chrysler employees.

This case involves two groups of plaintiffs who were employed by these third-party suppliers: the DeShetler Plaintiffs and the Sheets Plaintiffs. The DeShetler Plaintiffs were long-serving hourly Chrysler employees and UAW members. When Chrysler began allowing third-party suppliers to perform work on the assembly line, Chrysler began recruiting the DeShetler Plaintiffs to retire and start working for the third-party suppliers. Each of the DeShetler Plaintiffs retired from Chrysler in or around 2006 and began working at the Jeep Wrangler paint shop, where they were employed by a series of third-party suppliers.[2]

The Sheets Plaintiffs, who were not former Chrysler or FCA employees, were additional employees hired by the third-party suppliers between 2006 and 2012. Like the DeShetler Plaintiffs, the Sheets Plaintiffs were employed by a series of third-party suppliers. UAW

---

[1] The district court also dismissed an age discrimination claim under Ohio law, but Plaintiffs do not appeal dismissal of that claim.

[2] Plaintiffs contend that the third-party suppliers were employers in name only and that they were really employed by Chrysler and, subsequently, FCA. This issue is not relevant to this Court's conclusion, so the Court will not address it.

represented the DeShetler and Sheets Plaintiffs throughout this time period. When Plaintiffs were hired by these third-party suppliers, they were each assigned a seniority date based on when they were hired. As with many jobs, seniority comes with perks. Plaintiffs allege that the arrangement allowing third-party employees to work on the assembly line violated long-established practice and various collective bargaining agreements between FCA—and previously Chrysler—and UAW.

In late 2011 or early 2012, FCA decided to end the third-party arrangement with the goal of having all the employees in the Wrangler paint shop be FCA employees. This decision created the need for collective bargaining between FCA and UAW over the status of Plaintiffs who had been working for the third-party suppliers. General Holiefield, then Vice President of the UAW's Chrysler Division, took over bargaining over the status of Plaintiffs on behalf of UAW. Alphons Iacobelli, then FCA's Vice President of Employee Relations, led the negotiations on behalf of FCA.

Plaintiffs allege that the bargaining was marred by several procedural and substantive irregularities. First, Plaintiffs allege that Holiefield and his team locked the local union and Plaintiffs out during the negotiations in violation of the UAW Constitution. The local union's exclusion from bargaining was also contrary to long and well-established practice.

Furthermore, during the bargaining, Holiefield accepted FCA's position, without objection or dispute, that Plaintiffs had been employed solely by the third-party suppliers rather than FCA and, thus, would be treated as new hires. Plaintiffs allege that this decision was "inexplicable" given (1) a long course of dealing between FCA and UAW, (2) FCA's assumption of a previous collective bargaining agreement governing Plaintiffs, (3) the provisions of the various master agreements and collective bargaining agreements between FCA and UAW, (4) the repeated

assurances from FCA management and UAW that Plaintiffs would receive appropriate seniority, and (5) the prior treatment of Plaintiffs as FCA employees notwithstanding their third-party employers.

After the negotiations, FCA agreed to hire many of the Sheets Plaintiffs, but they were "arbitrarily assigned a seniority date of November 30, 2012," rather than the date when they had begun working in the Wrangler paint shop. This loss in seniority negatively affected the Sheets Plaintiffs' pay, pension, and other benefits. The DeShetler Plaintiffs were not hired; instead, FCA maintained, and UAW agreed, that the DeShetler Plaintiffs could not be re-hired by FCA after retiring in 2006. FCA and UAW reasoned that master agreements between the two prevented retired employees from returning to work, but Plaintiffs allege that the master agreements did allow the re-hiring of retired employees.

Plaintiffs allege that UAW officials from Holiefield's team "offered shifting and illogical explanations" for FCA's decision to terminate the DeShetler Plaintiffs. At one point, the local union and a group of the DeShetler Plaintiffs met with an FCA human resources executive, who agreed that Plaintiffs should continue to be employed under the terms of the master agreements, but, shortly after, an UAW official on Holiefield's team told the local union the opposite. Additionally, during the internal appeals process, UAW stopped arguing that the master agreements prohibited FCA from rehiring the DeShetler Plaintiffs, and, instead, UAW claimed that they attempted to negotiate for the continued employment of the DeShetler Plaintiffs.

On November 14, 2012, FCA and UAW prepared a memorandum that contained the agreement regarding Plaintiffs' employment. Four days later, on November 18, 2012, UAW presented a collective bargaining agreement, which mirrored the terms contained in the memorandum, to the members of the local UAW union for ratification. UAW officials from

Holiefield's team presented the agreement and indicated that, if it were not ratified, Plaintiffs would all likely be terminated by FCA. The local union ratified the agreement.

Plaintiffs filed grievances and appeals with both UAW and FCA. While Plaintiffs followed the grievance procedures established by the collective bargaining agreements between UAW and FCA, these grievances did not make it very far in the process because FCA denied the grievances, and UAW refused to process the grievances beyond the early stages. Plaintiffs also filed an internal appeal with the UAW. The internal appeal advanced through the entire appellate process established by the UAW Constitution and ultimately made it to the Public Review Board, an internal UAW body, which, on April 29, 2014, upheld the decision to deny relief to Plaintiffs. Before the Public Review Board, Plaintiffs argued "that there was something amiss" at the international UAW office and referenced "recent allegations about General Holiefield" and other UAW officials. However, Plaintiffs maintain that they did not have knowledge that Holiefield had accepted bribes to take FCA-friendly positions during collective bargaining negotiations until after the unsealing of the indictments discussed below.

On July 26, 2017, felony indictments of Alphons Iacobelli and Monica Morgan, General Holiefield's wife,[3] were unsealed. The indictments alleged a bribery scheme wherein Iacobelli diverted funds to Holiefield and Morgan in exchange for FCA-friendly positions during negotiations.

Plaintiffs filed claims against UAW and FCA on January 11, 2018, within six months of the unsealing of the indictments. Plaintiffs brought two causes of action that are relevant for purposes of this appeal: (1) a hybrid claim under section 301 of the LMRA against UAW and FCA and (2) a claim against UAW for violation of its independent duty of fair representation under 29

---

[3] General Holiefield died in 2015.

U.S.C. § 185. The district court consolidated the cases of the DeShetler Plaintiffs and Sheets Plaintiffs on February 21, 2018. Plaintiffs filed amended complaints, and Defendants moved to dismiss all claims. The district court found that both claims were time-barred and granted dismissal.[4] Plaintiffs filed a timely appeal.

II.

A.

We review the district court's dismissal of Plaintiffs' amended complaints *de novo*, accepting all factual allegations in the complaints as true and construing those allegations in the light most favorable to Plaintiffs. *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, 864 F.3d 455, 458 (6th Cir. 2017) (citations omitted). The standard is the same when the district court concludes that a plaintiff has failed to meet the statute of limitations. *Martin v. Lake Cty. Sewer Co.*, 269 F.3d 673, 677 (6th Cir. 2001) (citation omitted). A motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations" unless "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Here, we conclude that the allegations in the complaints,[5] which are recited above and taken as true and in the light most favorable to Plaintiffs, affirmatively show that Plaintiffs' claims are time-barred.

---

[4] The district court also found that the hybrid claim against FCA and UAW should be dismissed because Plaintiffs failed to allege that FCA breached any provision of a collective bargaining agreement. Because this Court finds that Plaintiffs' claims are time-barred, we need not address this aspect of the judgment.

[5] The district court also relied on the Public Review Board's decision from April 29, 2014, which was attached to Defendants' motion to dismiss. Before the district court, Plaintiffs argued that the district court should not consider this document because it was not attached to Plaintiffs' amended complaints. Plaintiffs, however, do not challenge consideration of that document in this appeal, so we will also consider the decision.

B.

Plaintiffs alleged two relevant claims against Defendants: (1) a hybrid section 301 claim against UAW and FCA and (2) an independent fair representation claim against UAW under 29 U.S.C § 185. A hybrid section 301 action involves two interdependent claims: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 583 (6th Cir. 1994)). To succeed against either the union or the employer, plaintiffs must prove both violations. *Id.* With regard to a breach of a collective bargaining agreement by the employer, plaintiffs must sufficiently plead a breach of an actual provision of a collective bargaining agreement and cannot simply allege collusion that affected the bargaining process. *Swanigan v. FCA US, LLC*, No. 18-2303, 2019 WL 4309672, at *3 (Sept. 12, 2019).

A union breaches its duty of fair representation when its actions or omissions are arbitrary, discriminatory, or in bad faith. *Garrison*, 334 F.3d at 538 (citing *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). Plaintiffs do not need to show all three; rather, plaintiffs have three separate and distinct routes to prove that a union violated its duty of fair representation. *Id.* (citing *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994)). A union's actions are arbitrary if, in light of the factual and legal landscape at the time of the union's actions, "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Id.* (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). Discrimination must be "intentional, severe, and unrelated to legitimate union objectives." *Amalgamted Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971) (citation omitted). "To demonstrate bad faith, a plaintiff must show that the union acted with an improper intent, purpose, or motive

encompassing fraud, dishonesty, and other intentionally misleading conduct." *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 644 (6th Cir. 2018) (citation omitted).

Plaintiffs' claims are governed by a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). The statute of limitations begins to run when a claim accrues, and, "[i]n general, a claim accrues when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation. *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993) (internal alterations and quotations omitted). This determination is an objective one, and the actual knowledge of Plaintiffs is not determinative. *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994) (citations omitted). "A hybrid § 301/fair representation claim accrues against both the union and the employer when the employee knew or should have known of the acts constituting either the employer's alleged violation or the union's alleged breach, whichever occurs later." *Lombard v. Chrome Craft Corp.*, 264 F. App'x 489, 490-91 (6th Cir. 2008). Plaintiffs need not "know the *extent* of the alleged breach of the duty of fair representation to file a claim." *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 367 (6th Cir. 2011) (emphasis in original). The Supreme Court, in the context of other types of claims, has also noted that "in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock" even if "considerable enquiry and investigation may be necessary" to discover the other elements. *Rotella v. Wood*, 528 U.S. 549, 555-56 (2000).

However, the statute of limitations will typically toll while plaintiffs are pursuing internal union appeals, unless the appeal is "completely futile." *Robinson*, 987 F.2d at 1242. Equitable

tolling under the doctrine of fraudulent concealment is available when "(1) the defendant concealed the conduct that constitutes the cause of action; (2) defendant's concealment prevented plaintiff from discovering the cause of action within the limitations period; and (3) until discovery[,] plaintiff exercised due diligence in trying to find out about the cause of action." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988).

III.

Because the statute of limitations does not begin to run in a hybrid Section 301 claim until plaintiffs knew or should have known that both the employer and the union breached (whichever is later), *Lombard*, 264 F. App'x at 490-91, we first determine when Plaintiffs should have known of each breach. Starting with FCA, Plaintiffs allege that FCA breached various collective bargaining agreements by (1) allowing third-party suppliers to work on the assembly line, (2) terminating DeShetler Plaintiffs, and (3) stripping Sheets Plaintiffs of their seniority. We assume, without deciding, that Plaintiffs have alleged an actual breach of a collective bargaining agreement rather than simply alleging collusion in negotiations. *See Swanigan v. FCA US, LLC*, No. 18-2303, 2019 WL 4309672, at *3 (Sept. 12, 2019).

The amended complaints show that Plaintiffs' claims of breach by FCA accrued no later than November 2012. According to Plaintiffs' allegations, the third-party supplier arrangement ended "no later than 2011," although this allegation is disputed, and Plaintiffs further allege that FCA "purported to officially take over direct management of the Wrangler Paint Shop" on November 30, 2012. Taking the latter date in an attempt to construe Plaintiffs' claims in a light most favorable to them, we can see that six months from November 30, 2012, would be in May 2013. Likewise, the termination of the DeShetler Plaintiffs and the stripping of the Sheets Plaintiffs' benefits became effective on November 30, 2012. Again, six months would be in May

2013. Plaintiffs were aware of these alleged breaches at the time and allege, throughout the amended complaints, that these actions by the employer were in violation of various collective bargaining agreements between FCA and UAW.

Next, we turn to Plaintiffs' discovery of the breach of the duty of fair representation by UAW. Plaintiffs allege that UAW breached its duty of fair representation in several ways. First, UAW "acted in an arbitrary, discriminatory and dishonest manner in its duty to represent Plaintiffs in the bargaining process that resulted" in the November 2012 agreement stripping the Sheets Plaintiffs of their seniority and terminating the DeShetler Plaintiffs. Next, Plaintiffs allege that, despite UAW's repeated assurances that the third-party supplier arrangement would not adversely affect Plaintiffs, UAW "left Plaintiffs without any collective bargaining protection at all." Finally, UAW failed "to process their grievances beyond any stage over which it had discretion."

While less clear than Plaintiffs' discovery of FCA's alleged breaches, Plaintiffs' discovery of UAW's breaches occurred, or should have occurred, by November 2012 as well. If we apply the discovery accrual rule as envisioned by the Supreme Court in *Rotella*, 528 U.S. at 555, this case is simple. Plaintiffs discovered their injuries, except for their issues with the grievance process discussed below, in November 2012 when they were terminated or stripped of their seniority. Even if we assume that Plaintiffs needed to discover, or be able to discover, the arbitrary, discriminatory, or bad faith conduct by UAW before the claims accrued, *see Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003), Plaintiffs, based on their own allegations discussed in more detail below, knew or should have known by November 2012 that the union had acted arbitrarily.

Plaintiffs allege that the bargaining between UAW and FCA in 2012 concerning Plaintiffs "was marred by several procedural and substantive irregularities." Plaintiffs allege that UAW

excluded the local union in violation of both the UAW Constitution and long and well-established practice. In *Linton v. United Parcel Service*, this Court held that "an unprecedented departure from past practice . . . might very well constitute a breach of [a] union's duty of fair representation." 15 F.3d 1365, 1373 (6th Cir. 1994). Here, Plaintiffs allege just that: an unprecedented departure from long and well-established practice. Additionally, Plaintiffs allege that UAW "inexplicably accepted" "without objection or dispute" FCA's position that the DeShetler Plaintiffs could not be re-hired, despite a long course of dealing and the provisions of the various collective bargaining agreements. These allegations, along with the other allegations in the complaint, show that Plaintiffs knew or should have known that UAW acted arbitrarily and, thus, breached its duty of fair representation in November 2012.

While the unsealing of the indictments in 2017 strengthened Plaintiffs' claim, Plaintiffs' own allegations show that they should have already known that UAW acted arbitrarily. In *Bowerman*, this Court explained that Plaintiffs need not "know the *extent* of the alleged breach of the duty of fair representation to file a claim." *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 367 (6th Cir. 2011) (emphasis in original); *see also Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 506 (7th Cir. 1999) ("[T]he tolling inquiry asks only whether the plaintiff was unable to learn of the possibility of its claim within the limitations period; it does not ask whether the plaintiff was unable to obtain solid proof."). Here, Plaintiffs may not have known the extent of UAW's breach of the duty of fair representation, but Plaintiffs should have known that UAW had violated the duty of fair representation.

Plaintiffs also allege that UAW failed to process its grievances beyond the early stages of the appellate process. Although it is not entirely clear from the amended complaints, the Public

Review Board's Decision appears to mark the end of Plaintiffs' appeals with UAW. The Public Review Board released its decision denying Plaintiffs' final appeal on April 29, 2014. Before the Public Review Board, Plaintiffs argued "that there was something amiss" at the international UAW office and referenced "recent allegations about General Holiefield" and other UAW officials. Again, these allegations, along with allegations in the complaints, show that Plaintiffs knew or should have known, as of April 2014, that UAW acted arbitrarily or, maybe even in bad faith, meaning the statute of limitations would have run by October 2014.

Next, we examine whether the statute of limitations was tolled. If we assume that Plaintiffs' claims against UAW were tolled while Plaintiffs pursued their claims within the internal appeals processes of the UAW, *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1242 (6th Cir. 1993), then we are still left with a filing deadline in October 2014, which is six months from the date of the Public Review Board's denial of Plaintiffs' final appeal. Plaintiffs have also argued for equitable tolling, but equitable tolling requires that "defendant's concealment prevent[] plaintiff from discovering the cause of action within the limitations period." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988). Here, we have already determined that Plaintiffs knew or should have known of UAW's breach by April 2014. As such, equitable tolling is not warranted here.

Because we use the later date of Plaintiffs' discovery of the breach by the employer or the union, we hold that Plaintiffs' claims against Defendants accrued and were no longer tolled by April 2014 at the latest. And, because the statute of limitations expires six months from the date of accrual, excluding periods where tolling occurs, the statute of limitations expired no later than October 2014. Accordingly, Plaintiffs' claims, which were filed on January 11, 2018, are time-barred.

IV.

For the foregoing reasons, we **AFFIRM** the district court's grant of dismissal.