RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ESTATE OF ROBERT CORNELL, JR.; AUDREY D.
BANTOM, as Personal Representative of the Estate of
Robert L. Cornell, Jr.; ANTHONY CORNELL,

  *Plaintiffs-Appellants*,

  *v.*

BAYVIEW LOAN SERVICING, LLC; THIEN HOANG
TRAN,

  *Defendants-Appellees*.

No. 18-1245

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-12121—Gershwin A. Drain, District Judge.

Decided and Filed:  November 13, 2018

Before:  SUHRHEINRICH, MOORE, and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Vanessa G. Fluker, VANESSA G. FLUKER, ESQ., PLLC, Detroit, Michigan, for Appellants.  Deborah S. Lapin, Martin S. Frenkel, MADDIN, HAUSER, ROTH & HELLER, P.C., Southfield, Michigan, for Appellee Bayview Loan Servicing.  Joseph J. Bernardi, BERNARDI, RONAYNE & GLUSAC, P.C., Plymouth, Michigan, for Appellee Thien Hoang Tran.

SUHRHEINRICH, J., delivered the opinion of the court in which BUSH, J., joined. MOORE, J. (pp. 12–28), delivered a separate dissenting opinion.

_____

**OPINION**

_____

SUHRHEINRICH, Circuit Judge.  This appeal concerns a non-judicial foreclosure under Michigan law.  After reviewing the pleadings, we conclude that the district court lacked subject matter jurisdiction to hear the case.  Thus, we **VACATE** the judgment of the district court with instructions to **REMAND** to Michigan state court.

## I.  FACTS

Robert Cornell, Jr. ("Robert") died on July 29, 2015, owing an outstanding mortgage amount of $113,358.12 on his home at 8615 Wisconsin Street in Detroit, Michigan.  At the time of Robert's death, the monthly mortgage payments on the Wisconsin Street home were up to date.  Yet in the five months following his death, the mortgage went unpaid.  Defendant Bayview Loan Servicing, LLC ("Bayview"), the mortgage holder, sent a delinquency notice to the home on December 16, 2015, showing an unpaid balance of $5,813.95.  On November 3, 2016, Bayview foreclosed on the mortgage and purchased the home by sheriff's deed at public auction.  Bayview later sold the home to Defendant Thien Hoang Tran ("Tran").

## II.  PROCEDURAL HISTORY

On May 25, 2017, Plaintiffs-Appellants Estate of Robert L. Cornell, Jr. ("Estate"), by and through Personal Representative Audrey D. Bantom and Anthony Cornell (collectively, "Plaintiffs") filed a complaint in Michigan state court alleging four causes of action against Bayview, including most notably a lack of standing to foreclose under the Garn-St. Germain Depository Institutions Act of 1982, codified at 12 U.S.C. § 1701j-3 ("Garn-St. Germain Act" or "Act") and MICH. COMP. LAWS § 445.1626.  Bayview timely removed to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331, citing the Garn-St. Germain Act.  Plaintiffs did not object to removal or seek remand.  Instead, Plaintiffs filed an amended complaint asserting an additional claim of quiet title against Tran (Count V).  Defendants moved for judgment on the pleadings in part on the argument that the Garn-St. Germain Act does not authorize a private right of action.  The district court agreed, ruling that the Garn-St. Germain

Act does not authorize a private right of action, the Garn-St. Germain Act did not apply to Plaintiffs' claims, or both. The district court granted Defendants' motion on all counts and entered a judgment in their favor. The district court denied Plaintiffs' motion for reconsideration, and Plaintiffs filed this timely appeal.

### III.  ANALYSIS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove a case only if the claim could have been brought in federal court. 28 U.S.C. § 1441(a). Removal jurisdiction is determined from the "well-pleaded complaint." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

Although no one has specifically addressed subject matter jurisdiction to this point, we have an independent obligation to consider it and may do so *sua sponte*. *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002) (Subject matter jurisdiction "can never be forfeited or waived."). We must correct any defect in subject matter jurisdiction regardless of whether the district court considered it, *Cotton*, 535 U.S. at 630, even if "many months of work on the part of the attorneys and the court may be wasted," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *see also Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711–12 (6th Cir. 2012) (vacating district court's grant of summary judgment after determining that Federal Railroad Safety Act did not create a private cause of action).

The face of the complaint references a federal statute, the Garn-St. Germain Act, 12 U.S.C. § 1701j-3, which was the sole basis for federal question jurisdiction removal from state court. Before Congress passed the Garn-St. Germain Act, many states had laws restricting the enforcement of due-on-sale clauses.[1] *Dupuis v. Yorkville Fed. Sav. & Loan Ass'n*, 589 F.

---

[1]A due-on-sale clause is a "contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." 12 U.S.C. § 1701j-3(a)(1).

Supp. 820, 822 (S.D.N.Y. 1984).  The Garn-St. Germain Act prohibits states from banning due-on-sale clauses, providing in principal part that "[n]otwithstanding any provision of the constitution or laws (including judicial decisions) of any State to the contrary, a lender may, subject to subsection (c) of this section, enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan."  12 U.S.C. § 1701j-3(b)(1).  That means a due-on-sale clause is presumptively valid unless it qualifies as one of nine exceptions listed in § 1701j-3(d):

> With respect to a real property loan secured by a lien on residential real property containing less than five dwelling units, including a lien on the stock allocated to a dwelling unit in a cooperative housing corporation, or on a residential manufactured home, a lender may not exercise its option pursuant to a due-on-sale clause upon—
>
> > (1)    the creation of a lien or other encumbrance subordinate to the lender's security instrument which does not relate to a transfer of rights of occupancy in the property;
> >
> > (2)    the creation of a purchase money security interest for household appliances;
> >
> > (3)    a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety;
> >
> > (4)    the granting of a leasehold interest of three years or less not containing an option to purchase;
> >
> > (5)    a transfer to a relative resulting from the death of a borrower;
> >
> > (6)    a transfer where the spouse or children of the borrower become an owner of the property;
> >
> > (7)    a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the borrower becomes an owner of the property;
> >
> > (8)    a transfer into an inter vivos trust in which the borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property; or
> >
> > (9)    any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board.

In other words, after the Garn-St. Germain Act, states can only regulate nine types of due-on-sale clauses.  In response to the Garn-St. Germain Act, Michigan created its own cause of

action for lendees harmed by one of those nine banned due-on-sale clauses.  *See* MICH. COMP. LAWS § 445.1626 ("A lender shall not enforce a due-on-sale clause in a residential real property loan in any circumstances under which enforcement is prohibited under section 341(d) of the Garn-St. Germain depository institutions act of 1982, 12 U.S.C. 1701j-3, as currently in force."); MICH. COMP. LAWS § 445.1628 (creating a private cause of action for a violation of § 445.1626).

To fulfill our obligation of ascertaining subject matter jurisdiction, we must determine whether a private cause of action "arises under" the statute sufficient to confer federal subject matter jurisdiction.  The "arising under" gateway into federal court in fact has two distinct paths: 1) "litigants whose causes of action are created by federal law," and 2) "state-law claims that implicate significant federal issues."  *Hampton*, 683 F.3d at 711 (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)).  Because the Garn-St. Germain Act does not meet this first test, we join those courts, including this one, that have concluded 12 U.S.C. § 1701j-3 does not establish subject matter jurisdiction based on a federal cause of action. *Turman v. Wells Fargo Bank, N.A.*, No. 16-6546, 2018 WL 1840199, at *2 (6th Cir. Mar. 21, 2018) (order) (dismissing because "section 1701j–3 . . . does not provide a right of action"); *Dupuis*, 589 F. Supp. at 823 (concluding "§ 1701j–3(d)(1) does not create a cause of action for damages"); *Nelson v. Nationstar Mortg. LLC*, No. 7:16-CV-00307-BR, 2017 WL 1167230, at *2 (E.D.N.C. Mar. 28, 2017) (dismissing because "the Garn-St. Germain Act does not create a cause of action for damages").  As we explain below, subject matter jurisdiction is also not established under the second test.

## A.  Causes of Action Created by Federal Law

"[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action."  *Hampton*, 683 F.3d at 711 (quoting *Merrell Dow*, 478 U.S. at 808).  To determine whether a private cause of action exists, we must begin with the text of the statute.  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  The cause of action may be express, *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018), or implied, *California v. Sierra Club*, 451 U.S. 287, 292–93 (1981).

### 1. Express Cause of Action

The Garn-St. Germain Act does not create an express cause of action because it does not state, "in so many words, that the law permits a claimant to bring a claim in federal court." *Ohlendorf*, 883 F.3d at 640 (quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)). Section 1701j-3(b)(1) tells states that they cannot pass laws that restrict the use of due-on-sale clauses, subject to nine exceptions. And while § 1701j-3(d) lists the nine things a lender may not do, it does not offer an aggrieved lendee recourse in federal court.

### 2. Implied Cause of Action

Nor does the Garn-St. Germain Act create an implied cause of action. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross*, 442 U.S. at 568 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). Instead, we must discern congressional intent before implying a remedy. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988). Absent congressional intent, we may not imply a remedy, no matter how desirable it may be. *Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 559 (6th Cir. 2009).

When Congress wishes to create new rights—even implied rights of action—"it must do so in clear and unambiguous terms." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Congress implies a right of action when its rights-creating language is "clear and unambiguous." *Ohlendorf*, 883 F.3d at 641 (quoting *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005)). Thus, the statute must specify the right and identify the beneficiary.[2] *Id.*; *see also Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that ban conduct but do not identify specific beneficiaries do not suffice."). This Act does not do both. Section 1701j-3(a)(1) bans states from passing laws restricting due-on-sale clauses, and § 1701j-3(d) bans lenders from exercising

---

[2]For example, a statute that merely prohibits the funding of "any educational agency or institution which has a policy or practice of permitting the release of education records" does not create any rights, even though students may benefit from the statute and have an interest in enforcing it. *Ohlendorf*, 883 F.3d at 641 (quoting *Gonzaga*, 536 U.S. at 287–88). Similarly, "a statute that authorizes federal agencies 'to effectuate the provisions of [a ban on intentional race discrimination] . . . by issuing rules, regulations, or orders of general applicability'" does not create any rights. *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 288–89 (2001)).

due-on-sale clauses in certain scenarios.   Neither section identifies specific beneficiaries. Although mortgagors may benefit, because § 1701j-3 "focus[es] on the person[s] regulated rather than the individuals protected," *Sandoval*, 532 U.S. at 289, and does not unambiguously specify a beneficiary, no right of action can be implied.

This conclusion is consistent with the legislative history, assuming it is even relevant,[3] and the traditional areas of state regulation.   The legislative history is silent regarding a remedy; at most, it references the general goal of the statute to preempt state laws restricting due-on-sale clauses.   "The Senate Bill provides a federal preemption of state laws and judicial decisions which restrict the enforcement of due-on-sale clauses in real property loans . . ."  S. REP. NO. 97-641, at 89 (1982) (Conf. Rep.).   Nothing in the legislative history of the Garn-St. Germain Act suggests that Congress intended to displace all state mortgage laws.   Instead, all it does is draw a line for state regulation of due-on-sale clauses—with certain exceptions—and leaves states in control of the quintessentially state areas of contract and mortgage law.   *See* § 1701j-3(b)(2) ("the exercise by the lender of its option pursuant to such a clause **shall be exclusively governed by the terms of the loan contract**, and all rights and remedies of the lender and the borrower **shall be fixed and governed by the contract**" (emphasis added)); *see also* 12 C.F.R. § 591.4 (same).   Thus, in states that allow judicial foreclosure actions, a mortgagor can raise as a defense an exception to the Garn-St. Germain Act in state court.[4]  *Dupuis*, 589 F. Supp. at 822.   And in states that allow non-judicial foreclosures, like Michigan, the state can create its own cause of action that allows a mortgagor to preemptively to raise the defense.   *See, e.g.*, MICH. COMP. LAWS §§ 445.1626, 445.1628.   But there is nothing implicit in the Act granting immediate access to federal court.

---

[3]*See Gonzaga*, 536 U.S. at 286 ("[W]here the *text and structure of a statute* provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." (emphasis added)); *Sandoval*, 532 U.S. at 288 ("We therefore begin (and find that we can end) our search for Congress's intent with *the text and structure* of Title VI." (emphasis added)).

[4]But this, as we know, is not a free ticket for removal into federal court because the cause of action must be determined from the face of the complaint.   *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012).

## B. State Law Implicates Substantial Question of Federal Law

State laws that implicate a "substantial question of federal law" also open the door into federal court. *See Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). We ask whether (1) "a state-law claim necessarily raise[s] a stated federal issue," (2) that is "actually disputed and substantial," (3) "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. This pathway is a "slim category," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006), that is to be read narrowly, *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 568 (6th Cir. 2007) (en banc). In this case, MICH. COMP. LAWS §§ 445.1626 and 445.1628 reference the Garn-St. Germain Act, but the question they raise is not sufficiently substantial to justify federal question jurisdiction.[5]

*Grable* provides direction here. In that case, the Supreme Court held that a state quiet title action implicated a substantial question of federal law because it required the interpretation of the federal tax code. *Grable*, 545 U.S. at 314–15. The entire dispute would be resolved by interpretation of the federal provision. *Id.* at 315. The Court reasoned that the question was substantial because the IRS "has a strong interest in the prompt and certain collection of delinquent taxes" and a direct interest in vindication via a federal forum. *Id.* (citation omitted). The Court also explained that federal judges have more experience in federal tax matters. *Id.* Finally, the Court noted that allowing disputes over federal tax title provisions would only have a "microscopic impact on the federal-state division of labor." *Id.*

Applying three-prong test articulated in *Grable* makes it clear that no federal question exists here. While the first prong favors jurisdiction because §§ 445.1626 and 445.1628 reference the Garn-St. Germain Act and nominally raise a federal issue,[6] the second and third

---

[5]Notably, the dissent does not argue that the Garn-St. Germain Act contains an express or implied cause of action, and therefore implicitly acknowledges that Congress did not intend to create one.

[6]The dissent suggests that "the case for subject matter jurisdiction here is even stronger" than in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) (*ICS*) because the claim would not exist without the federal statute. Dissenting Op. at 19. In *ICS*, the Chicago Landmarks Commission made a preliminary determination that seven buildings qualified for designation as a landmark district. *ICS*, 522 U.S. at 159–60. The plaintiffs challenged the administrative decision by filing two complaints in state court via a state cause of action—the Illinois Administrative Review Law—alleging Due Process, Equal Protection, and Takings Clause violations under the Fifth

prongs disfavor jurisdiction. This question is not substantial and creating a gateway into federal court will specifically disrupt the deference Congress gave to state courts to regulate in their traditional areas of expertise.

For the second prong of the *Grable* analysis, there are four "substantiality" factors to consider: (1) "whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute"; (2) "whether the federal question is important (i.e. not trivial)"; (3) "whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome)"; and (4) "whether a decision on the federal question will control many other cases (i.e. the issue is not anomalous or isolated)." *Mikulski*, 501 F.3d at 570. All four cut against finding substantiality. The first factor "is both objective and apparent, and in this case weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute."[7] *Id.* (citing *Empire*, 547 U.S. at 700). The second factor—which focuses on "the importance of the issue to the federal system as a whole," *Gunn v. Minton*, 568 U.S. 251, 260 (2013)—also weighs against substantiality. The Garn-St. Germain Act sets a limit on state regulation in one very particular aspect of state property law. *See Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 590 (6th Cir. 2013) (holding that the second factor "point[ed] away from a substantial federal interest" when the claim involved "a typical state-law property issue"). It is hard to fathom how determining the contours of the nine circumstances in which states may prohibit a lender from enforcing a due-on-sale clause is especially important to the federal government. As for the third factor, even if

---

and Fourteenth Amendments. *Id.* at 160. The defendants removed to federal court, and the Supreme Court eventually considered whether federal courts have original jurisdiction to review claims that local administrative actions violate federal law. *Id.* at 163. The Court summarily concluded that the federal claims at issue "unquestionably" raised substantial issues of federal law. *Id.* at 164. That is not the case here, where no constitutional issues are at play. *See Grable*, 545 U.S. at 320 n.7 ("[C]onstitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction." (citation omitted)). In addition, *ICS* preceded *Grable*, and the *Grable* Court did not rely on *ICS* to craft its three-prong test that we apply today. *See id.* at 313.

[7]The dissent mentions that the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Corporation have an interest in the stability of the housing market and the uniform interpretation of the Garn-St. Germain Act. Dissenting Op. at 22. While that may be true, the nine exceptions at issue leave so little room for dispute that it should make no difference whether a state or federal court interprets them. And in any event, those agencies are "not affected by the resolution of the dispute between these two parties." *Mikulski*, 501 F.3d at 570.

we were to consider the parties' claims, they dispute whether a due-on-sale clause was even used, much less whether it was invoked in violation of the Garn-St. Germain Act's nine exceptions. We would not have to interpret federal law to resolve the dispute, and, even if we did, other issues would remain. Finally, the fourth factor cuts against substantiality. As the dissent notes, "only two states—Michigan and New Mexico—supply a cause of action for a violation of 12 U.S.C. § 1701j-3," Dissenting Op. at 26, so it is doubtful that a decision on the federal question will control many other cases. Considering these factors, the federal question embedded in Plaintiffs' state law claim is not substantial.

As for the third *Grable* prong, entertaining the state law claim would certainly disturb the balance of state and federal responsibilities. *Grable*, 545 U.S. at 314. We start by noting, again, that Congress chose not to provide a remedy. *Mikulski*, 501 F.3d at 573 (explaining while "the absence of a cause-of-action provision is not determinative, [it] certainly provides a starting point for this part of the analysis"). And with good reason—state contract and property law are uniquely within the province of the states. Shifting resolution of such traditional state law claims from state courts to federal courts when the Garn-St. Germain Act does nothing more than articulate a straightforward prohibition to the states, with nine plain exceptions that states are perfectly capable of interpreting, is an unnecessary usurpation of state law domain.[8] We see no reason to manage state-law mortgage cases that would otherwise be barred from federal court because of such a simple determination of law. This case is a far cry from *Grable*, where the government was concerned about its ability to collect delinquent taxes, 545 U.S. at 315, or *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) where the government's constitutional ability to issue bonds was called into question. And while we will not speculate on the amount of cases this would bring into federal court, "even if the actual number of cases proved not to be overwhelming, or even uncomfortably burdensome, it appears unlikely that Congress—through its silence—intended to open the federal court door quite so wide." *Mikulski*, 501 F.3d at 574.

---

[8]For example, state courts are perfectly capable of determining whether a lender exercised a due-on-sale clause upon "a transfer to a relative resulting from the death of a borrower" or "a transfer where the spouse or children of the borrower become an owner of the property." 12 U.S.C. § 1701j-3(d)(5)–(6).

The dissent argues "That a federal court would throw the Act's interpretation into the hands of the states, *and only the states*, seems to undermine Congress's expressed intent in the text of the Act." Dissenting Op. at 27. To the contrary, the only expressed intent in the statute is that states cannot ban due-on-sale clauses unless they qualify as one of the nine types listed in § 1701j-3(d). Congress may provide a remedy and chose not to do so with this statute. Congress, as it intended, left that task in the capable hands of the states because it did not want to disrupt the federal-state balance in an area where states have a much stronger interest and experience.

"As every schoolchild learns," the states "retain substantial sovereign authority" of their own property laws. *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991) (citing THE FEDERALIST NO. 45, at 292–93 (James Madison) (C. Rossiter ed., 1961) ("The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people . . . .")). As courts of limited jurisdiction, we can only entertain questions of state law when Congress has authorized us to do so (i.e. diversity jurisdiction) or when a state law raises a substantial question of federal law. This is not that case.

## IV. CONCLUSION

In sum, because the federal statute does not create a cause of action, and the federal issue nested inside Plaintiffs' state law cause of action is not substantial, the district court lacked subject matter jurisdiction. Therefore, we **VACATE** the district court's judgment with instructions to **REMAND** the case to state court.

_____

## DISSENT

_____

KAREN NELSON MOORE, Circuit Judge, dissenting.  This case began as a simple dispute about whether a mortgage lender enforced a due-on-sale clause in a circumstance where federal law prohibited enforcement.  But the case has now veered into the significant question of the meaning of the words "arising under" in 28 U.S.C. § 1331.  The majority concludes that there is no substantial federal question in this case, and consequently, that the federal courts lack subject matter jurisdiction.  In fact, the claim at issue turns exclusively on federal law and is well within federal question jurisdiction under § 1331.  For the reasons that follow, I respectfully dissent.

## I. BACKGROUND

Audrey Bantom is the personal representative for the Estate of Robert Cornell, Jr., and Anthony Cornell (collectively "Plaintiffs") resided in the Detroit, Michigan home that is at issue in this case.  R. 4 (Am. Compl. at 1) (Page ID #23).  Bayview Loan Servicing and Thien Hoang Tran are the Defendants.  Before his death, Robert Cornell, Jr. entered into a mortgage contract with Bayview, which is a mortgage lending company.  *Id.* at 2 (Page ID #24).  Most relevant to the issue of our subject matter jurisdiction, the Plaintiffs allege that Bayview illegally foreclosed on the home upon the death of their father, Robert, in violation of the federal Garn-St. Germain Act, 12 U.S.C. § 1701j-3(d), and Michigan law, Mich. Comp. Laws § 445.1626.  *Id.* at 4–5 (Page ID #26–27).  Michigan law provides a cause of action for this claim against Bayview.  Mich. Comp. Laws § 445.1628.

Perhaps not the most well-known statute, the Garn-St. Germain Act ("the Act") is nonetheless a fascinating piece of legislation in that Congress chose to interpose in areas of law—property and contract—traditionally regulated by the states.  Under the Act, a due-on-sale clause is presumptively valid, 12 U.S.C. § 1701j-3(b)(1)–(2), unless one of nine exceptions apply, *id.* at § 1701j-3(d).  A due-on-sale clause is defined as, "a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's

security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent." *Id.* at § 1701j-3(a)(1). The Act prohibits enforcement of such clauses upon, among other circumstances, "a transfer to a relative resulting from the death of a borrower" or "a transfer where the spouse or children of the borrower become an owner of the property." *Id.* at § 1701j-3(d)(5)–(6). Michigan law then provides a cause of action for money damages, injunctions, and/or declaratory judgments against lenders who violate these provisions of the Garn-St. Germain Act. Mich. Comp. Laws §§ 445.1626, 445.1628. Michigan, or any state, cannot add to or subtract from the federal law because the Garn-St. Germain Act preempts any state laws, including judicial decisions, contrary to its provisions. 12 U.S.C. § 1701j-3(b)(1).

The context in which Congress enacted this law sheds light on the Act's importance. When Congress passed the statute, state legislatures and state courts restricted the enforcement of due-on-sale clauses. *Id.*; S. Rep. No. 97–536 at 20–21 (1982) ("Senate Rep."). Congress sought to help new home buyers and lenders, as well as to clear-up confusion on the enforceability of such clauses. Senate Rep. at 20–21. State due-on-sale clause restrictions "adversely affect[ed] secondary mortgage markets, which rely on uniform, homogenous mortgage documents to efficiently operate," and these "restrictions . . . caused the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Corporation to alter their investment practices in several states." *Id.* at 21. Thus, these state restrictions were adversely affecting entities sponsored by the federal government, and consequently, Congress intervened to protect the federal interests at play. At the same time, Congress balanced helping new homebuyers and lenders, 12 U.S.C. § 1701j-3(b)(1)–(2), with safeguards for existing homeowners, *id.* at § 1701j-3(d). Clearly, in Congress's judgment uniformity was required because the states were not adequately doing the job of balancing these various interests. *See id.* at § 1701j-3(b)(1); Senate Rep. at 20–21.[1]

---

[1]The Office of the Comptroller of the Currency, an independent bureau within the Department of Treasury, shared Congress's concerns. As it explained in an interpretive letter after the Act was passed:

> Pursuant to the Comptroller's power to regulate real estate lending activities of national banks, on September 22, 1981, this Office issued a proposed rule . . . to ensure that the congressional intent of encouraging national bank participation in the real estate finance market would not be thwarted by state laws. The proposed regulation would have validated the inclusion

## II.  CLARIFYING THE FOCUS OF SUBJECT MATTER JURISDICTION

### A.    Federal Question or "Arising Under" Jurisdiction

A defendant can remove a case from state court if the plaintiff could have originally brought the case in federal court.  28 U.S.C. § 1441(a).  The federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Plaintiffs originally filed their case in state court.  Then the Defendants removed the case to federal court on the basis that "Plaintiffs' Complaint is founded upon claims or rights arising under the laws of the United States."  R. 1 (Notice of Removal at 2–3) (Page ID #2–3).[2]  Whether removal was proper, therefore, solely depends on the existence of a federal question such that the case "arises under" federal law.

First, we must carefully dissect the anatomy of this case to determine what is actually relevant for our jurisdictional inquiry.  The Plaintiffs bring a claim under 12 U.S.C. § 1701j-3, and Mich. Comp. Laws § 445.1626.  Michigan law prohibits a lender from enforcing a "due-on-sale clause in a residential real property loan in any circumstances" that are prohibited by the Garn-St. Germain Act.  Mich. Comp. Laws § 445.1626; 12 U.S.C. § 1701j-3(d).  The state law, therefore, turns exclusively on the Garn-St. Germain Act, which creates the federal right that the Plaintiffs argue Bayview violated.  As the Plaintiffs note, Mich. Comp. Laws § 445.1628, in turn, supplies a cause of action.  Appellant's Br. at 8–9; Mich. Comp. Laws § 445.1628(3) (authorizing suits for declaratory judgment and/or an injunction); *id.* at § 445.1628(4) (authorizing actions for money damages).  Accordingly, the state-created cause of action is

of due-on-sale clauses in real estate loans held by national banks in their portfolios and would have made such clauses fully enforceable.  In addition, the regulation would have revalidated due-on-sale clauses in loans made prior to the rendering of a state court decision or the passage of a state statute impairing the enforceability of such clauses.

Some time after publication of the proposed rule, Congress began consideration of federal preemption of state laws limiting the enforceability of due-on-sale clauses.  This deliberation ultimately resulted in section 341 of the Garn-St Germain Depository Institutions Act of 1982 ("Act") (codified at 12 U.S.C. § 1701j-3) that established a federal preemption of state restrictions on the enforcement of due-on-sale clauses.

Office of the Comptroller of the Currency, OCC Interpretive Letter (Jan. 13, 1986), 1986 WL 144000 at *1.

[2]The Plaintiffs allege that the amount in controversy exceeds only $25,000, R. 4 (Am. Compl. at 2) (Page ID #24), and therefore, the Plaintiffs fail to overcome the $75,000 threshold for diversity jurisdiction under 28 U.S.C. § 1332(a).

simply a remedial vehicle for a plaintiff to vindicate a right, the contours of which are defined entirely by federal law.

Turning to 28 U.S.C. § 1331, for a federal court properly to exercise federal question jurisdiction under that statute, a federal question must appear on the face of a plaintiff's well-pleaded complaint. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Here, the Plaintiffs satisfied the well-pleaded complaint rule. Count I of the complaint recites the § 1701j-3(d) exemptions on which the Plaintiffs rely. R. 4 (Am. Compl. at 4–5) (Page ID #26–27). Putting aside (for now) issues of whether this federal question is sufficiently "substantial," it is worth emphasizing that only this claim matters for the inquiry of whether we have federal question jurisdiction. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 166–68 (1997) (*ICS*). Although the Plaintiffs assert other claims that rest entirely on state law, a federal court has discretion to hear those claims or not. 28 U.S.C. § 1367(c). In other words, this case has two distinct jurisdictional hooks: Count I (the Garn-St.Germain Act and Mich. Comp. Laws §§ 445.1626, 445.1628) is on the federal question hook; Counts II–V are on the discretionary supplemental jurisdiction hook. To analyze properly whether we have subject matter jurisdiction, we must imagine this case as if the Plaintiffs pleaded only the purported federal question claim. *See ICS*, 522 U.S. at 166 ("The District Court's original jurisdiction derives from [a plaintiff's] federal claims, not its state law claims."). If a federal court determines that jurisdiction lies over the claim with the federal question, it must hear the claim; and then, separately, a court has discretion over whether to welcome the other claims that rest on state law into federal court under § 1367. The Supreme Court has rejected as "mistaken" and "erroneous" the "view that the district courts lack jurisdiction even over the *federal* claims" because "other, nonfederal claims somehow take [a] complaint[] in [its] entirety (including the federal claims) out of the federal courts' jurisdiction." *Id.* at 168. Thus, as it relates to subject matter jurisdiction, the entire focus is on the Plaintiffs' first claim, which incorporates federal law.

The majority misunderstands the importance of this separation between the purported federal question claim and the other purely state-law claims. The majority reasons that, even if this case required the interpretation of federal law, "other issues would remain"; and the majority also believes that hearing the federal question claim here would require federal courts "to

manage state-law mortgage cases." Majority Op. at 10. The majority's reasoning misses the mark. As explained, federal courts can hear the federal question claim and then decline to hear the other state-law claims. Section 1367 gives federal courts the discretion to do so.

**B.      The Federal Cause of Action Analysis is Separate and Distinct from Subject Matter Jurisdiction**

The question of whether a federal court has subject matter jurisdiction is separate from whether there is a federal cause of action. First, if the two analyses were one and the same, then the longstanding rule that the federal courts can exercise federal question jurisdiction over state-law causes of action would be wrong—and it is not. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312–13 (2005); *ICS*, 522 U.S. at 164; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *Hopkins v. Walker*, 244 U.S. 486, 490–91 (1917); *cf. De Sylva v. Ballentine*, 351 U.S. 570, 571–82 (1956) (deciding on the merits a state-law claim that involved the federal Copyright Act, without discussing jurisdiction), *cited in* Richard H. Fallon, Jr., et al., Hart & Wechsler's The Federal Courts and the Federal System 836 n.6 (7th ed. 2015). Second, *Shoshone Mining Co. v. Rutter* would be wrongly decided for the opposite reason. There, the Supreme Court held that the federal courts lacked jurisdiction because the claim turned on "a determination of the meaning and effect of certain local rules and customs" related to mining rights, even though the plaintiff pleaded a federal cause of action. *Shoshone*, 177 U.S. 505, 509–10 (1900) ("A statute authorizing an action to establish a right is very different from one which creates a right to be established. An action brought under the one may involve no controversy as to the scope and effect of the statute, while in the other case it necessarily involves such a controversy, for the thing to be decided is the extent of the right given by the statute."); *see also Shulthis v. McDougal*, 225 U.S. 561, 569–70 (1912) (a plaintiff's claim to title derived from federal law, but the federal statutes were not subject to "any controversy respecting their validity, construction or effect"). The presence or absence of a federal cause of action is not dispositive, in either direction, for the jurisdictional question.

For a classic example of this separation of remedies and jurisdiction, consider the declaratory judgment statute. 28 U.S.C. § 2201. Congress added declaratory relief to the menu of remedies available to plaintiffs in federal court, but Congress did not expand federal

jurisdiction in doing so. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). On the other hand, even if Congress explicitly forecloses a federal remedy, it does not follow that Congress intends to foreclose federal jurisdiction. Erwin Chemerinsky, Federal Jurisdiction 307 (6th ed. 2012). Of course, if Congress wished to limit the federal courts' jurisdiction, it could enact such limits and vest jurisdiction in the state courts. *See, e.g.*, 15 U.S.C. § 2310(d) (setting certain thresholds for a claim under the Magnuson-Moss Warranty Act, which if not met, deprive a federal court of jurisdiction to hear such a claim). Such a limit does not exist in the Garn-St. Germain Act.

Importantly, the remedial question is easily answered in this case: Michigan law explicitly provides a cause of action. Mich. Comp. Laws § 445.1628. We need to answer only whether the federal courts have jurisdiction over a state-created cause of action under § 1331. With that, we can explore the statute.

### III. SUBJECT MATTER JURISDICTION IN THIS CASE

Under Article III of the United States Constitution, a federal question exists whenever federal law is a potential ingredient in the litigation. *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 823 (1824). Section 1331, however, requires more than a mere federal ingredient. And in this case, federal law is the whole recipe.

For over a century, the Supreme Court has recognized that federal question jurisdiction will lie over state-law claims that have a federal question nested inside the state claim. *See, e.g.*, *Grable*, 545 U.S. at 312–13; *Smith*, 255 U.S. at 199; *Hopkins*, 244 U.S. at 490–91. The test is whether a state-law claim: (1) raises a federal issue, (2) that is "actually disputed and substantial," and where (3) hearing the state-law claim in federal court would not disturb the federal-state balance of judicial responsibilities. *Grable*, 545 U.S. at 314. In sum, although a plaintiff cannot use a "federal issue" as an automatic "password" to open federal courts, a federal statute plus a federal cause of action is also not the only combination that unlocks jurisdiction under § 1331. *Id.* A federal issue nested inside a state-law cause of action can also suffice.

The majority engages with this test and Supreme Court precedent in a cursory and conclusory fashion, and it fails to understand the consequences of the Garn-St. Germain Act.

The majority states that "the Garn-St. Germain Act does nothing more than articulate a straightforward prohibition to the states." Majority Op. at 10. Not so. The Act, in addition to preempting state laws contrary to its provisions, § 1701j-3(b)(1), prescribes the situations in which due-on-sale clauses must be enforced, § 1701j-3(b)(2), details specific situations in which such clauses cannot be enforced, § 1701j-3(d), and authorizes the Federal Home Loan Bank Board to issue rules and regulations[3] pursuant to the Act, § 1701j-3(e). Furthermore, the majority suggests that Congress's choice to preempt state laws in this area is insignificant. To the contrary, Congress thought a sufficiently significant problem existed, as well as a sufficient threat to federal interests, which prompted intervention into the traditionally state-regulated areas of property and contract. Senate Rep. at 20–21. When Congress passed the Garn-St. Germain Act and preempted any state law contrary to the Act's provisions, Congress also created federal rights. Most relevant here, individuals have "a federal right . . . to be free from a lender's purported enforcement of a due-on-sale clause" in the circumstances outlined in § 1701j-3(d). *See Dupuis v. Yorkville Fed. Sav. & Loan Ass'n*, 589 F. Supp. 820, 822 (S.D.N.Y. 1984).[4]

A more thorough examination of whether the federal question in this case is "substantial" is needed. But as a preliminary matter, no one contests that the Plaintiffs raise a federal issue and that it is actually disputed. As it relates to Count I of the complaint, the applicability of the Act "is actually in dispute," and "it appears to be the only legal or factual issue contested" for that claim. *See Grable*, 545 U.S. at 315. Therefore, I will focus on whether this federal question is sufficiently "substantial" (it is), and whether welcoming this claim into federal court would disturb the federal-state balance of judicial responsibilities (it would not).

---

[3]*See, e.g.*, 12 C.F.R. § 591.1–591.6 (regulations on the preemption of state due-on-sale laws); 12 C.F.R. § 591.5(a) ("due-on-sale practices of Federal savings associations and other lenders shall be governed exclusively by the Office's regulations, in preemption of and without regard to any limitations imposed by state law on either their inclusion or exercise including, without limitation, state law prohibitions against restraints on alienation, prohibitions against penalties and forfeitures, equitable restrictions and state law dealing with equitable transfers.").

[4]Notably, even the district court in *Dupuis* recognized the existence of a federal right, despite the district court's conclusion that the Act itself did not create a federal cause of action. 589 F. Supp. at 822–23. I do not express any view on whether the Act contains a cause of action here. But, for the sake of argument, even if the Act did not contain a cause of action, that is simply irrelevant because Michigan law provides one.

A.      **The Substantial Federal Question**

**1.  Whether Federal Law is Directly and Exclusively Relevant**

To start, this case should be situated alongside relatively recent Supreme Court precedent that found federal question jurisdiction to lie over a state-law claim.  In a sense, the case for subject matter jurisdiction here is even stronger than in *Grable* and *ICS*.  *Grable* involved a quiet title action, the outcome of which turned on whether proper notice was given under a federal statute.  545 U.S. at 311.  *ICS* involved federal constitutional claims brought via a cause of action created by state law.  522 U.S. at 164; *see also* 735 Ill. Comp. Stat. 5/3-103.  In both cases, as here, the validity of the claims depended exclusively on federal law.  But not all quiet title actions are based upon a federal question, and the same is true for claims under the Illinois statute at issue in *ICS*.  This Michigan cause of action involved here, however, would literally not exist without federal law.  The relevant substance of the Michigan law reads, "[a] lender shall not enforce a due-on-sale clause in a residential real property loan in any circumstances under which enforcement is prohibited under section 341(d) of the Garn-St. Germain depository institutions act of 1982 . . . as currently in force."  Mich. Comp. Laws § 445.1626.  For every single action brought under this state-law claim, a federal law will be the singular consideration.

Supreme Court precedent does not draw bright lines when it comes to determining whether a federal question is "substantial" or "essential" to a plaintiff's claim.  As Justice Cardozo explained, whether a case "arises under" federal law calls for a "common-sense accommodation of judgment to [the] kaleidoscopic situations" that present a federal question. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 117 (1936); *see also Grable*, 545 U.S. at 313.  Of course, a federal question could always be "lurking in the background" such that "countless claims of right can be discovered to have their source or their operative limits in the provisions of a federal statute or in the Constitution itself."  *Gully*, 299 U.S. at 117–18.  Thus, "[t]o set bounds to the pursuit [for a substantial federal question], the courts have formulated the distinction between controversies that are basic and those that are collateral, between disputes

that are necessary and those that are merely possible." *Id.* at 118.[5]    One could imagine a spectrum of cases:  on one end are cases where the federal issue is "so far removed from plain necessity," *id.* at 117, that it is not substantial or essential; on the other end are cases where the federal issue is directly and actually in dispute and a claim turns exclusively on the federal issue, *see, e.g.*, *Grable*, 545 U.S. 308; *ICS*, 522 U.S. 156; *Smith*, 255 U.S. 180, such that the federal issue is substantial and essential.  Under this view, this prong of the *Grable* test turns on how relevant state law is to the underlying substance of a plaintiff's claim as compared to federal law, and whether the federal question is at the forefront of the case rather than simply "lurking in the background."

The Garn-St. Germain Act further bolsters the conclusion that substantive state law is irrelevant because the Act preempts state laws contrary to its provisions.  12 U.S.C. § 1701j-3(b)(1).  For example, states cannot create new rights by expanding upon the exemptions listed in the Act.  *Id.* at § 1701j-3(d).  That is not to say preemption alone confers jurisdiction, *see Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 697 (2006), but it leaves no doubt that only federal law is relevant, *cf.* Hart & Wechsler at 835 (noting that the Supreme Court in *Empire* "described with some skepticism the argument that federal law would govern" the issue of an attorney's share of a state tort settlement); *Empire*, 547 U.S. at 701 (stating that it was "hardly apparent why a proper 'federal-state balance' would place such a nonstatutory issue under the complete governance of federal law").  Indeed, one cannot seriously dispute that federal law is at the forefront of the Plaintiffs' claim here.  This case does not involve a settlement or attorney's fees issue that is ancillary to the actual merits of the claim, *Empire*, 547 U.S. 677, or a "backward-looking" legal malpractice claim, the outcome of which will not change the previously answered federal question, *Gunn v. Minton*, 568 U.S. 251, 261 (2013), or a situation in which the violation of federal law does not entirely determine the success of a state tort claim, *see, e.g.*, *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) (violation of a

---

[5]*Cf. McGoon v. N. Pac. Ry. Co.*, 204 F. 998, 1001 (D. N.D. 1913) (explaining that cases do not "arise under" federal law where "the right asserted in the complaint was not a right created by federal law," or "such law was only indirectly and remotely" relevant in the litigation), *cited in Puerto Rico v. Russell & Co.*, 288 U.S. 476, 483–84 (1933) ("[Federal jurisdiction] may not be invoked . . . merely because the plaintiff's right to sue is derived from federal law . . . .  The federal nature of the right to be established is decisive—not the source of the authority to establish it.").

federal statute created a rebuttable presumption of negligence); *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007) (en banc) (violation of a federal statute satisfied some, but not all, of the elements of the state tort claim). Instead, the Plaintiffs in this case allege that Bayview violated a federal law that "is directly drawn into question," *Smith*, 255 U.S. at 201, and their claim "turn[s] exclusively on federal law," *ICS*, 522 U.S. at 164. In short, the entirety of the Plaintiffs' claim rises or falls on the answer to the federal question.

The majority misreads—and arguably goes against—Supreme Court precedent in its attempt to distinguish the present case. The majority states that, in this case, "no constitutional issues are at play," as in *ICS*, and that the Supreme Court "did not rely on *ICS* to craft" the *Grable* test. Majority Op. at 9 n.6. The first part of the majority's statement is irrelevant and the second part is false. *Grable* expressly rejects that, as to the substantiality question, we should differentiate constitutional claims from statutory claims. 545 U.S. at 319–20 n.7 ("There is . . . no reason in [§ 1331's] text or otherwise to draw such a rough line."). What's more, *Grable* did not turn a blind eye to *ICS*. To the contrary, the Court saw *ICS* as consistent with the substantiality test articulated in *Grable*. *See id.* at 313 (citing *ICS* as an example of a case that implicated a substantial federal issue). Simply put, the majority's reasoning on these points cannot be squared with *ICS* or *Grable*.

### 2. The Importance of the Federal Question to the Federal System as a Whole

Moreover, "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. When we view the substantiality issue through this lens, we focus our sight on a broader picture and not on the parties in this particular dispute. *Id.* (stating that in *Grable*, the Court "primarily focused not on the interests of the litigants themselves, but rather on the broader significance of the [federal] question"). The majority here, however, somehow sees only state interests—an odd observation for a statute in which Congress displaced a variety of state laws.

We have previously outlined four factors to consider when assessing the substantiality of a federal interest:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski*, 501 F.3d at 570. Importantly, none of these factors are dispositive, and not all are equally applicable in any one case. *Id.* Further, this list of factors is not exhaustive. *Id.* ("While certain of these factors may be more applicable than others in any given set of circumstances, no single factor is dispositive and these factors must be considered collectively, along with any other factors that may be applicable in a given case."). I will address each in turn.

Though true that *this case* does not involve a federal agency and a federal agency's compliance with the Act is not in dispute, I question the weight of this factor in light of *Gunn*, which the Supreme Court decided after our decision in *Mikulski*. *See Gunn*, 568 U.S. at 260. If we follow *Gunn*'s admonition not to focus solely on the litigants at hand, *see id.*, we should instead consider the federal government's interest in the question more generally. Before Congress passed the Garn-St. Germain Act, government-sponsored entities (i.e., the Federal Home Loan Mortgage Corporation and the Federal National Mortgage Corporation) were altering their investment strategies in several states because of uncertainty and a lack of uniformity related to due-on-sale restrictions. Senate Rep. at 21. Both entities are currently under the conservatorship of the Federal Housing Finance Authority.[6] While the FHFA and these government-sponsored entities may not have a stake in this particular dispute, the federal government has an interest in the stability of the housing market and uniform enforcement of due-on-sale clauses, and consequently, the scope of the Garn-St. Germain Act's exceptions in § 1701j-3(d). Notably, in *Grable*, the federal government also lacked a direct interest in the property at issue in the case. 545 U.S. at 317 n.4. But the Court still concluded that the federal

---

[6]Federal Home Loan Mortgage Corporation, https://www.usa.gov/federal-agencies/federal-home-loan-mortgage-corporation-freddie-mac (last visited Oct. 5, 2018); Federal National Mortgage Association, https://www.usa.gov/federal-agencies/federal-national-mortgage-association-fannie-mae (last visited Oct. 5, 2018).

question could "claim[] the advantages thought to be inherent in a federal forum." *Id.* at 313. If a lack of uniformity among the states motivated Congress to pass this Act, and if we believe that the federal courts provide the advantage of uniform interpretation, then the meaning of the Act "is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 315.

We have described the second *Mikulski* factor—whether the federal question is important and not trivial—as "far more subjective." 501 F.3d at 570. But in the present matter, we can look to a more objective factor: the statute itself. At risk of belaboring the point, clearly Congress thought this issue was important enough to preempt state laws, including judicial decisions, in areas traditionally reserved to the states. 12 U.S.C. § 1701j-3(b)(1). The upshot is that this case does not involve "a typical state-law property issue." *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 590 (6th Cir. 2013). The issue is the applicability of exemptions in a federal statute. In *Singh*, we further noted that "there is no allegation that [state courts] are not enforcing the property rights of natural gas companies or are otherwise impeding the [federal interest in] safe transmission of natural gas in a way that would call for a federal forum." *Id.* Congress found the opposite to be true in this case. *See* Senate Rep. at 20–21. Not only that, but Congress also gave the power to promulgate rules and to publish interpretations of the Act to a federal agency. 12 U.S.C. § 1701j-3(e). Considering the context in which Congress enacted the Garn-St. Germain Act, as well as the Act's plain text, the majority cannot say with a straight face that hearing this claim in federal court would "disrupt the deference Congress gave to state courts to regulate in their traditional areas of expertise." Majority Op. at 9. The inescapable fact is that Congress took away such deference from the states and replaced state law with a federal statute.

As stated, however, preemption alone should not be dispositive. In *Mikulski*, we also noted that "the IRS has never issued a rule" or "ever litigated an action" involving the provision of law at issue. 501 F.3d at 571. Thus, *Mikulski*'s analysis of this factor seemed to blend in with the first factor because we continued to reference the IRS's role (or lack thereof) in that case. *Id.* at 570–71. First, unlike *Mikulski*, the Federal Home Loan Bank Board has promulgated regulations in this area. *See supra* footnote 3. Second, *Mikulski*'s suggestion that more frequent litigation counseled in favor of finding jurisdiction cannot be squared with *Grable*'s and *Merrell*

*Dow*'s concern about welcoming in a "horde" of state cases into federal court. *See Grable*, 545 U.S. at 318 (describing *Merrell Dow*). *Grable* itself also gives no indication that the IRS had frequently litigated the question at issue in that case. Taken together, the first two factors militate in favor of finding that the federal question here is substantial.

The third and fourth factors—will answering the federal question dispose of "the case" and will it control numerous other "cases"—require some clarification on the meaning of "case(s)." *Mikulski*, 501 F.3d at 570.

The "case" in the third factor is really the "claim" on which the federal court's subject matter jurisdiction rests. To reiterate, the sole claim that matters for whether we have subject matter jurisdiction over this case is Count I of the Plaintiffs' complaint, which alleges a violation of the Garn-St. Germain Act. *See supra* II.A. The Supreme Court has flatly rejected the notion that we should look at any non-federal claims, which would fall under the discretionary supplemental jurisdiction in 28 U.S.C. § 1367, when we consider whether we have subject matter jurisdiction over the purported federal question claim. *ICS*, 522 U.S. at 167–68. If we concluded that the Plaintiffs' federal question claim fails on the merits, that could, in fact, dispose of the entire case because the federal court need not hear the other state claims. 28 U.S.C. § 1367(c). More importantly, the answer to the federal question will completely resolve the relevant state claim because that claim turns exclusively on federal law. Accordingly, this third factor weighs in favor of substantiality.

As to the fourth factor, we have to reconcile the "numerous other cases" language with the concern, once again, that we could throw open the courthouse doors to too many state claims. Admittedly, *Gunn* seems to suggest that "cases" refers to the amount of litigation. *See* 568 U.S. at 262 ("If the question arises frequently, it will soon be resolved within the federal system, laying to rest any contrary state court precedent; if it does not arise frequently, it is unlikely to implicate substantial federal interests."). On this point, *Gunn* (and *Empire*) seem to be in tension with *Grable*. In discussing the federal-state balance issue, *Grable* thought the fact that "it will be the rare state title case that raises a contested matter of federal law" counseled in favor of welcoming the state-law claim into federal court. 545 U.S. at 315. Assuming for the sake of

argument that we should focus on the amount of litigation, this factor leans against substantiality. The Garn-St. Germain Act does not appear to be frequently litigated.

But this factor is not dispositive and there are good reasons to give it less weight in the instant case. For one, hostile state-court precedent caused federal entities to alter their investment strategies in several states, which then motivated Congress to pass the Garn-St. Germain Act in the first place. Senate Rep. at 21. Additionally, even if this issue is not frequently *litigated*, due-on-sale clauses are common in mortgage contracts, and government-sponsored entities, lenders, and home buyers and sellers may find it beneficial to know how far the Act's due-on-sale enforcement exemptions reach. Finally, even if this factor weighs against substantiality, the other considerations already mentioned overwhelm any concern about the low amount of litigation.

In sum, on balance the *Mikulski* factors weigh in favor of substantiality. Moreover, those factors should be considered alongside the fact that federal law is directly and exclusively relevant to the Plaintiffs' state-law cause of action. In the "selective process which picks substantial [federal questions] out of the web and lays the other ones aside," *Gully*, 299 U.S. at 118, we can pick this federal question out of the web so that it can claim "the advantages thought to be inherent in a federal forum," *Grable*, 545 U.S. at 313.

## B.    The Federal-State Balance

This is not the sort of "garden variety" state case that has raised concerns in prior cases. For example, this case is nothing like *Merrell Dow*. In that case, the exercise of federal question jurisdiction over state-law tort claims "would have attracted a horde" of cases "raising other state claims with embedded federal issues." *See Grable*, 545 U.S. at 318; *Merrell Dow*, 478 U.S. 804. In essence, the Supreme Court in *Grable* clarified that *Merrell Dow* was concerned about the "tremendous number" of negligence cases that would be swept into federal court, *Grable*, 545 U.S. at 318, if federal question jurisdiction existed "solely because the violation of [a] federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law," *Merrell Dow*, 478 U.S. at 812. In contrast, "it is the rare state quiet title action that involves contested issues of federal law," and consequently, jurisdiction over that action "would not

materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 319. We have previously read these cases together in this manner. *See Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 712–13 (6th Cir. 2012) (noting the Supreme Court's distinction between "the rare state quiet title action" in *Grable* and the "garden variety state tort claim" in *Merrell Dow*, and concluding that, because the case involved a garden variety negligence claim, the case was more like *Merrell Dow*). As it pertains to this federal law, only two states—Michigan and New Mexico—supply a cause of action for a violation of 12 U.S.C. § 1701j-3. *See* Mich. Comp. Laws §§ 445.1626, 445.1628; N.M. Stat. §§ 48-7-20, 48-7-24.[7] Welcoming these claims into federal court, therefore, would not "disturb[] any congressionally approved balance of federal and state judicial responsibilities," or clog the "currents of litigation" in federal court. *See Grable*, 545 U.S. at 314, 319.

Indeed, *Merrell Dow* required clarification. Many commentators noted the confusion and uncertainty the case caused, eventually leading the Supreme Court to correct course in *Grable*. *See* James E. Pfander, Principles of Federal Jurisdiction 101 (West 2006) ("Judged solely by the degree to which it brought clarity to jurisdictional law, one might consider the *Merrell Dow* decision a failure."); *see also* Hart & Wechsler at 824–25; Chemerinsky at 306–07. The Court also admitted as much in its most recent decision in this area. *See Gunn*, 568 U.S. at 258 (stating that *Grable* was "an effort to bring some order to this unruly doctrine"). The confusion, of course, centered on the relevance of the absence of a federal cause of action. Hart & Wechsler at 824–25; Chemerinsky at 306–07.

Meanwhile, the majority resurrects the very confusion *Grable* sought to correct. One reading the majority opinion might understandably think that the cause of action analysis is determinative to the jurisdictional issue. *See, e.g.*, Majority Op. at 10 (relying on the absence of a cause of action to say that hearing this claim in federal court would "disturb the balance of state and federal responsibilities."). If the majority's analysis on this prong is taken too seriously and applied to its fullest extent, that would effectively undercut over a century of Supreme Court

---

[7]California and Indiana also incorporate parts of the Garn-St. Germain Act, but they do not appear to supply a cause of action.

precedent that recognizes federal question jurisdiction even in the absence of a federal cause of action. But at the very least, the majority goes against *Grable*'s reading of *Merrell Dow*.[8]

Finally, even if all fifty states adopted a law like Michigan's, the exercise of jurisdiction over such laws would not amount to a *federal court* disturbing the federal-state balance. Again, *Congress* wanted the Garn-St. Germain Act to displace any "laws (including the judicial decisions) of any State to the contrary." 12 US.C. § 1701j-3(b)(1). If there is a disturbance in the federal-state balance, it is not the disturbance the majority is looking for. Majority Op. at 10–11. That a federal court would throw the Act's interpretation into the hands of the states, *and only the states*, seems to undermine Congress's expressed intent in the text of the Act. To be sure, state courts are presumptively competent to adjudicate issues of federal law, *Tafflin v. Levitt*, 493 U.S. 455, 458–59 (1990), including this one. But that fact settles nothing about whether the federal courts have jurisdiction. The majority, however, seems to believe that the *Tafflin v. Levitt* presumption weighs against finding federal question jurisdiction. Majority Op. at 10 n.8, 11. If so, the majority is wrong. Ultimately, this final prong of the *Grable* standard focuses on congressional intent. In this case, the federal courts exercising jurisdiction is, if anything, consistent with Congress's intent to ensure that state courts do not restrict the enforcement of due-on-sale clauses. *See* 12 U.S.C. § 1701j-3(b)(1); Senate Rep. at 20–21; *see also* OCC Interpretive Letter, *supra* footnote 1, at *1.[9]

---

[8]Furthermore, the majority's analysis is inconsistent with the analysis of our own precedent, which reads *Merrell Dow* as the Supreme Court did in *Grable*. *See Hampton*, 683 F.3d at 711–13 (analyzing the cause of action issue and the substantial federal question issue separately).

[9]Whether or not "every schoolchild" actually learns that "states retain substantial sovereign authority of their own property laws," Majority Op. at 11 (internal quotations omitted), I am confident that every law student learns that Congress can regulate interstate commerce and preempt state laws. Congress did just that with the Garn-St. Germain Act. And as a result, the Plaintiffs' first claim here turns entirely on federal law and has nothing to do with state law or state sovereignty. If the majority believes there is "an unnecessary usurpation of state law domain," *id.* at 10, the majority's real problem is with Congress and the fact that it enacted a statute that displaces certain state property and contract laws.

## IV.  CONCLUSION

The difficulty of the issue of subject matter jurisdiction is matched by its importance. Subject matter jurisdiction is so fundamental that a court can (indeed a court must) rule on the matter sua sponte, without any motions by a party.  Fed. R. Civ. P. 12(h)(3).  We are the first circuit court of appeals to address this issue as it relates to the Garn-St. Germain Act.  We have done so without the benefit of any briefing from the parties on the jurisdictional issue of whether the federal question is substantial.

This case presents an exceptionally unique cause of action and federal question.  But that makes this case a prime candidate to "squeeze[] into the slim category" of state-law claims that "arise under" federal law.  *See Empire*, 547 U.S. at 701; 28 U.S.C. § 1331.  Indeed, the category is slim because the claims that fit into it are unique.

For the reasons expressed above, I respectfully dissent.